UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

C.Q., ET AL.,
                        Plaintiffs,          21-cv-3 (JGK)

          - against -                        MEMORANDUM OPINION
                                             AND ORDER
NEW YORK CITY DEPARTMENT OF
EDUCATION, ET AL.,
                        Defendants.
——————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiffs, J.Q., and his mother and guardian, C.Q.,

brought this action against the defendants, the New York City

Department of Education, the New York City Board of Education,

and David Banks, the Chancellor of the New York City Schools

(collectively, the "DOE"), alleging that the DOE violated the

plaintiffs' rights under (1) the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.; (2) Section

504 of the Rehabilitation Act of 1973 ("section 504"), 29 U.S.C.

§ 701 et seq; (3) the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12101 et seq; and (4) 42 U.S.C. § 1983

("section 1983").[1]

     The DOE has now filed a partial motion for judgment on the

pleadings dismissing the plaintiffs' claims, contending that

certain of the claims are time-barred, that the plaintiffs'

_____

[1] The plaintiffs initially asserted a claim pursuant to New York
State law but have withdrawn that claim. See Pl.'s Opp. to Mot.
for Judgment on the Pleadings("Opp.") at 20, ECF No. 125.

systemic allegations are without merit, and that the plaintiffs failed to state a claim under section 504, or section 1983. The plaintiffs counter that the relevant statutes of limitations were tolled for various reasons and that the claims are therefore timely. The plaintiffs further contend that the Amended Complaint states a claim under the IDEA, the ADA, section 504, and section 1983.

For the following reasons the DOE's motion to dismiss is **denied** except as applied to any claims accruing before June 4, 2002.

**I.**

**A.**

"Congress enacted the IDEA to promote the education of students with disabilities." A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ., 964 F. Supp. 2d 270, 274 (S.D.N.Y. 2013).[2] "Under the IDEA, states receiving federal funds are required to provide 'all children with disabilities' a 'free appropriate public education.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)); see also Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998). A free appropriate public education ("FAPE")

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

must provide "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." Gagliardo, 489 F.3d at 107.

To achieve this end, the IDEA requires state or local education agencies to provide each disabled student with an individualized education program ("IEP") specifying the student's educational needs and "the specially designed instruction and related services to be employed to meet those needs." Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 448 (2d Cir. 2015). Parents may challenge their child's IEP as inadequate by filing a Due Process Complaint ("DPC"), which triggers an administrative-review process by an impartial hearing officer ("IHO"). See M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013) (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1)). A party may appeal the decision of the IHO to a State Review Officer ("SRO"), and the SRO's decision may be challenged in state or federal court. Id. at 135-36. A party "aggrieved by the findings and decision" made by the IHO or the SRO may bring a civil action in district court within ninety days of the decision of the administrative body to appeal that decision. 20 U.S.C. § 1415(i)(2).

**B.**

The following description of the factual allegations in the Amended Complaint is accepted as true for purpose of the current motion.

J.Q. is a former New York City school student who has been diagnosed with autism spectrum disorder. First Am. Compl. ("FAC") ¶¶ 52–54. J.Q. was formerly classified as emotionally disturbed/speech impaired by the DOE—one of the enumerated IDEA disabilities. Id.

As relevant here, J.Q. was entitled to a FAPE beginning in the 1999–2000 school year (when he began high school) and continuing through the 2005–2006 school year. Id. ¶¶ 56, 61. However, between 1999 and 2003, J.Q. was transferred, discharged, and excluded from various schools because of behavior resulting from his disabilities. Id. ¶ 57. During the 2002-2003 school year, J.Q. was permanently discharged from a state-approved private school. Id. ¶ 58. After his expulsion, the DOE closed his special education case, and J.Q. did not complete high school. Id. ¶¶ 59, 63. The DOE did not provide J.Q. with home instruction services that would have permitted him to receive his high school diploma. Id. ¶ 62. The plaintiffs allege that, as a result of his educational experiences and lack

of a high school diploma, J.Q. failed to obtain employment or integrate into the community. Id. ¶ 64.

On September 20, 2002, the E.B. class action was filed, alleging that the DOE's policies and procedures led to the systemic expulsion, and resulting deprivation of FAPEs, of disabled students. Id. ¶¶ 68-69; see also FAC, Ex. C. at 7. On November 2, 2002, the complaint was amended to expand the scope of the class to include "disabled New York City children age three through twenty-one who have been, will be or are at risk of being excluded from school without adequate notice and deprived of a free appropriate public education through suspensions, transfers, discharges, removals and denials of access,"—a group that included the plaintiff. See FAC, Ex. C. at 7. That class was certified on August 17, 2004, and was subsequently narrowed in 2005—although it still included J.Q. See id.

On July 24, 2015, the court approved a Stipulation of Settlement (the "2015 Stipulation") in the E.B. action. FAC ¶ 76. The 2015 Stipulation did not provide class members with any compensatory or equitable relief and reserved the rights of putative class members to file individual claims. FAC ¶¶ 77-78. Class members received notices that they should file any

individual actions soon after the approval of the 2015 Stipulation. FAC ¶ 78.

On July 24, 2015, the plaintiffs filed their DPC pursuant to the IDEA, 20 U.S.C. § 1415(f). FAC, Ex. A. On December 3, 2015, the plaintiffs filed a second DPC, FAC, Ex. B., and the IHO consolidated the complaints, FAC, Ex. C. at 2. On January 2, 2018, the IHO issued a decision (the "2018 Decision"), concluding that the DOE had denied J.Q. a FAPE from November 2000 through 2006. FAC ¶ 88.[3] The IHO determined that it had no jurisdiction over the plaintiffs' section 1983 claims, but concluded that the plaintiffs' remaining claims were not barred by the statute of limitations because, pursuant to Am. Pipe Constr. Co. v. Utah, 414 U.S. 538 (1974), the filing of the E.B. class action tolled the statute of limitations for any related claims class members such as J.Q. might bring. FAC, Ex. C. at 8. The IHO awarded the plaintiffs various forms of relief including compensatory education. FAC, Ex. C. at 22-23.

The plaintiffs appealed certain aspects of the 2018 Decision. FAC ¶ 92. The DOE did not appeal, and the partial appeal was resolved pursuant to a Stipulation of Settlement and

---

[3] The IHO concluded that "any IDEA claims that accrued prior to November 5, 2000 and any Section 504 claims that accrued prior [to] November 5, 1999 are time-barred." FAC, Ex. C. at 9.

Agreement (the "2018 Stipulation"), in which the DOE agreed to provide additional relief to the plaintiffs. Id. ¶¶ 91, 93-94.

The plaintiffs filed this action on January 2, 2021. On May 30, 2023, the plaintiffs filed the Amended Complaint, alleging that the DOE failed to implement the 2018 Decision or 2018 Stipulation. The Amended Complaint also alleged violations of J.Q.'s rights pursuant to the IDEA, New York Education Law, section 504, and the ADA. Finally, the plaintiff brought a claim pursuant to section 1983. See generally FAC. The DOE filed a partial motion for judgment on the pleadings dismissing the Amended Complaint with regard to claims pre-dating the 2018 Stipulation. ECF 118.

## II.

The standard to be applied to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is identical to the standard applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) In both cases, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2008). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine

whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should accept the complaint's factual allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

### III.

The DOE now moves to dismiss the plaintiffs' claims relating to the 1999–2006 school years as time barred. The plaintiffs respond that the relevant statutes of limitations were tolled by (1) the pendency of the E.B. class action; (2) the IDEA's administrative exhaustion requirement; and (3) then-Governor Cuomo's executive order tolling state statutes of limitations for several months during the COVID-19 pandemic. Before addressing each of these possible tolling mechanisms, it

is necessary to determine the relevant statute of limitations for each claim.

**A.**

The statute of limitations governing IDEA claims depends on the type of claim asserted. In the administrative context, the IDEA requires that parents "request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." See 20 U.S.C. § 1415 (f)(3)(c); 20 U.S.C. § 1415(b)(6)(B); Somoza v. N.Y.C. Dep't of Educ., 538 F.3d 106, 114 n.7 (2d Cir. 2008). "[T]his limitations period, by its express terms, only governs the time required to bring a complaint in state and local administrative proceedings." Piazza v. Fla. Union Free Sch. Dist., 777 F. Supp. 2d 669, 688 (S.D.N.Y. 2011). After the conclusion of the state administrative proceedings, the party "aggrieved by the findings and decision" made by the IHO or the SRO must bring suit in federal court within ninety days of the decision of the IHO or SRO. 20 U.S.C. § 1415(i)(2)(A)-(B).

In this case, the IHO found "that the DOE denied J.Q. a FAPE from November 2000 through the 2005-2006 school year" and awarded certain relief. FAC ¶¶ 88, 90. The "[p]laintiffs partially appealed aspects of the IHO's decision to deny certain relief" and "[t]he partial appeal was resolved pursuant to" the

2018 Stipulation. FAC ¶¶ 92-93. Accordingly, the plaintiffs are not "aggrieved part[ies]," and the Amended Complaint is not an appeal of an earlier administrative decision subject to the ninety-day statute of limitations. See § 1415(i)(2)(A)-(B); see also Reply Mem. of L. ("Reply Mem.") at 3, ECF No. 127 (acknowledging that the plaintiffs' claims are novel and not merely "rehashed arguments made at the administrative level").

By contrast, the IDEA does not provide a statute of limitations for permissibly unexhausted IDEA claims brought directly in federal court. Piazza, 777 F. Supp. 2d at 688.[4] Instead, courts in the Second Circuit have applied a three-year statute of limitations borrowed from N.Y. C.P.L.R. § 214(2) to

---

[4] "Congress [has] specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002). In the Amended Complaint, the plaintiffs allege that further exhaustion would be futile and that the administrative bodies do not have jurisdiction to grant the plaintiffs their requested relief. See FAC ¶¶ 133-46. The DOE also has not renewed its earlier argument that the plaintiffs failed to exhaust administrative remedies before bringing this action in federal court. See FAC ¶ 133 (alleging that the DOE objected to the initial complaint on the ground that the plaintiffs failed to exhaust administrative remedies).

permissibly unexhausted IDEA claims. Id.; see also S.W. ex rel. J.W. v. Warren, 528 F. Supp. 2d 282, 301–02 (S.D.N.Y. 2007).

The ADA also does not contain an express statute of limitations, and the Second Circuit Court of Appeals has applied a three-year statute of limitations to ADA claims. Purcell v. N.Y. Inst. of Tech. – Coll. of Osteopathic Med., 931 F.3d 59, 63 n.13 (2d Cir. 2019) (collecting cases). Similarly, "Rehabilitation Act claims in New York are governed by New York's three-year statute of limitations governing personal injury actions, N.Y. C.P.L.R. § 214(5)." Piazza, 777 F. Supp. 2d at 687. Finally, section 1983 claims arising in New York also have a three-year statute of limitations. Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (citing Owens v. Okure, 488 U.S. 235, 250–51 (1989)).

Accordingly, this Court will apply a three-year (1095-day) statute of limitations to all the claims at issue and address each potential basis for tolling the statutes in turn.

### 1.

The plaintiffs first contend that the relevant statutes of limitations were tolled from November 2, 2002, through July 23, 2015, because of the pendency of a class action alleging claims

under the IDEA, the ADA, section 504, and section 1983 in which
J.Q. was a potential class member.

In American Pipe, the Supreme Court held that "the
commencement of a class action suspends the applicable statute
of limitations as to all asserted members of the class who would
have been parties had the suit been permitted to continue as a
class action." 414 U.S. at 554. The DOE contends that American
Pipe only "tolls the statute of limitations with respect to all
absent would-be class members until the time class certification
is denied," and that in this case the class was certified and
J.Q. was a member, thereby rendering American Pipe inapplicable.
See Reply Mem. at 4 (quoting Mazzei v. Money Store, 829 F.3d
260, 267 (2d Cir. 2016)). However, the DOE misreads American
Pipe's holding.

In interpreting American Pipe, the Court of Appeals for
the Second Circuit has held that:

> Because members of the asserted class are
> treated for limitations purposes as having
> instituted their own actions, at least so long
> as they continue to be members of the class,
> the limitations period does not run against
> them during that time. Once they cease to be
> members of the class—for instance, when they
> opt out or when the certification decision
> excludes them—the limitation period begins to
> run again on their claims.

In re WorldCom Sec. Litig., 496 F.3d 245, 255 (2d Cir. 2007). In
this case, J.Q. became a member of the class on November 2,

2002. At that point J.Q. was "treated for limitations purposes as having instituted [his] own action[]" and the limitations period was tolled. See id. After the Stipulation was filed on July 24, 2015, reserving the rights of the students to file individual actions for compensatory and equitable relief, the statute of limitations on any of J.Q.'s individual IDEA, ADA, section 504, and section 1983 claims began to run again.

Accordingly, all the plaintiffs' claims were tolled from November 2, 2002, through July 24, 2015.

### 2.

The plaintiffs next contend that the requirement that the plaintiffs exhaust administrative avenues before bringing an action in federal court further tolled the relevant statutes of limitations while the plaintiffs pursued administrative remedies.

"Claims are tolled during mandatory administrative exhaustion." K.C. v. Chappaqua Cent. Sch. Dist., No. 16-cv-3138, 2018 WL 4757965, at *18 (S.D.N.Y. 2018) (citing Gonzalez v. Hasty, 651 F.3d 318, 324 (2d Cir. 2011)). The IDEA requires plaintiffs to exhaust their administrative remedies before filing an action in federal court. See Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 530 (2d Cir. 2020). In the IDEA context, exhaustion requires that parties first bring a DPC before an IHO and, if the IHO's decision is unfavorable, appeal

that decision to the SRO. Cave v. E. Meadow Union Free Sch.
Dist., 514 F.3d 240, 245 (2d Cir. 2008).

Section 1415(l) of the IDEA extends the exhaustion
requirement to claims brought under other federal statutes,
including the ADA, section 504, and section 1983, provided the
plaintiff "seek[s] relief that is also available under [the
IDEA]." 20 U.S.C. § 1415(l); see also Cave, 514 F.3d at 248-49
(holding that "the IDEA's exhaustion rule applies to all of
appellants' federal causes of action [including ADA, section
1983, and section 504 claims] regardless of their statutory
bases"). Until recently, the Court of Appeals for the Second
Circuit required that parties exhaust administrative remedies
for all their federal causes of action even where the plaintiffs
sought remedies—such as compensatory or punitive damages—that
are not available under the IDEA. See id. at 246-47; see also
Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288
F.3d 478, 488 (2d Cir. 2002).

However, in Luna Perez v. Sturgis Pub. Schs. ("Sturgis"),
598 U.S. 142 (2023), the Supreme Court held that section 1415(l)
applies "only to the extent [parties] pursue[] a suit under
another federal law for remedies IDEA also provides," 598 U.S.
at 146-47, even where the other federal claims asserted also
"seek to redress the denial of a FAPE." Simmons v. Murphy, No.
23-288-cv, 2024 WL 2837625, at *3 (2d Cir. June 5, 2024)

14

(summary order). In this case, the plaintiffs request "compensatory damages of at least $1,050,000," FAC at 26, relief not available under the IDEA. Accordingly, pursuant to <u>Sturgis</u>, the administrative exhaustion requirement does not apply to the plaintiffs' non-IDEA claims.

The plaintiffs contend that <u>Sturgis</u> should not be applied retroactively to bar claims that would not otherwise have been time-barred. Opp. at 10. However, as the plaintiffs acknowledge, the Supreme Court has held that where it,

> applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.

<u>Harper v. Va. Dep't of Tax'n</u>, 509 U.S. 86, 97 (1993). While the plaintiffs ask this Court to give weight to the plaintiffs' detrimental reliance on the earlier exhaustion requirement, the Supreme Court has been clear that courts "can scarcely permit the substantive law to shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." <u>Id.</u>

Separately, the plaintiffs point to the doctrine of "equitable tolling" which allows courts to "extend the statute

of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996).[5] "[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." Lozano

---

[5] Other courts have applied equitable tolling in cases where an unforeseeable, intervening Supreme Court decision resulted in a plaintiff's claim being time barred. See, e.g., Jimenez v. Walker, 166 F. Supp. 2d 765 (E.D.N.Y. 2001). In Jimenez, the petitioner filed an application for a writ of habeas corpus. Id. at 767. He later asked that the district court either stay habeas proceedings with respect to his exhausted claims so that he could pursue state court remedies for his unexhausted claims or dismiss the habeas action without prejudice to allow him to proceed with post-conviction state proceedings. Id. at 768. The district court dismissed without prejudice. Id. Subsequently, the petitioner submitted a second petition for a writ of habeas corpus in federal court, and the respondent moved to dismiss the petition as time barred. Id. at 769.

At the time the initial petition was filed, the Second Circuit Court of Appeals had concluded that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") required that the one-year statute of limitations be tolled during the pendency of a habeas petition in federal court. Walker v. Artuz, 208 F.3d 357, 360 (2d Cir. 2000), rev'd Duncan v. Walker, 533 U.S. 167 (2001). However, during the pendency of the petitioner's case, the Supreme Court held that a pending federal habeas petition does not toll AEDPA's statute of limitations. Duncan, 533 U.S. at 181–82. The district court concluded that the "subsequent and unforeseeable Supreme Court decision in Duncan" was an "extraordinary circumstance" that justified equitably tolling the AEDPA statute of limitations. Jimenez, 166 F. Supp. 2d at 772; see also Padilla v. Keane, No. 3-cv-357, 2003 WL 22462004, at *3 (S.D.N.Y. Oct. 29, 2003) (concluding that if Duncan were to apply retroactively the petition would be dismissed as time barred but that the petitioner's "case warrant[ed] equitable tolling of the statute of limitations"); De Jesus v. Miller, 215 F. Supp. 2d 410 (S.D.N.Y. 2002) (same).

v. Montoya Alvarez, 572 U.S. 1, 10 (2014). "Generally, a
litigant seeking equitable tolling bears the burden of
establishing two elements: (1) that he has been pursuing his
rights diligently, and (2) that some extraordinary circumstance
stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418
(2005); see also Doe v. United States, 76 F.4th 64, 71 (2d Cir.
2023).

The Second Circuit Court of Appeals "has . . . recognized
the applicability of equitable tolling where resort to an agency
is a jurisdictional prerequisite to seeking review in federal
court." Johnson, 86 F.3d at 12 (quoting Higgins v. N.Y.C. Stock
Exch., Inc., 942 F.2d 829, 833 (2d Cir. 1991)). In Johnson, the
Court of Appeals for the Second Circuit considered "whether
equitable tolling applies in cases where deferral to an agency's
primary jurisdiction is mandated by the court and accomplished
by dismissal without prejudice." Id. at 12. The court determined
that equitable tolling could apply where the court dismisses an
action without prejudice and directs the plaintiff to first
exhaust administrative options before "seeking redress in
federal court." Id. However, the court also concluded that the
plaintiff in that case had not pursued his rights diligently and
therefore could not benefit from equitable tolling. Id.

In this case, the plaintiffs satisfy both elements of the
equitable tolling test. First, unlike the plaintiff in Johnson,

17

J.Q. and C.Q. brought their DPC on the same day that the <u>E.B.</u> class action stipulation restarted the statute of limitations clock. The plaintiffs therefore "exercised reasonable care and diligence," <u>Dodds v. Cigna Sec., Inc.</u>, 12 F.3d 346, 350 (2d Cir. 1993), and took "affirmative action . . . to preserve [their] right[s]" <u>Bowers v. Transportacion Maritima Mexicana, S.A.</u>, 901 F.2d 258, 264 (2d Cir. 1990).

Second, extraordinary circumstances prevented the plaintiffs from bringing a timely action in federal court. If the plaintiffs in this case had pursued their claims in district court prior to proceeding before the IHO and appealing to the SRO, the district court likely would have cited binding Second Circuit precedent, dismissed the claim without prejudice, and instructed the plaintiff to proceed before the relevant administrative tribunal.

Because equitable tolling applies to the time the plaintiffs spent exhausting administrative remedies, the statute of limitations was tolled from July 24, 2015, when the plaintiffs filed their DPC, until January 2, 2018, when the IHO issued the 2018 Decision.

**3.**

The statute of limitations began to run again on January 3, 2018. However, the plaintiffs claim that 807 days later, on

18

March 20, 2020, Governor Cuomo tolled the limitations period

pursuant to Executive Order No. 202.8. That order provided that:

> [D]uring the pendency of the COVID-19 health
> crisis, any specific time limit for the
> commencement, filing, or service of any legal
> action . . . as prescribed by the procedural
> laws of the state . . . is hereby tolled from
> the date of this executive order until April
> 19, 2020.

Governor Cuomo subsequently extended the tolling through

November 3, 2020. See Brash v. Richards, 149 N.Y.S.3d 560, 562

(App. Div. 2021) (listing the series of nine executive orders

extending the toll).

　　Courts in this district have held that executive orders

that toll state statutes of limitations also toll the statutes

of limitations for federal claims that import state statutes of

limitations. See, e.g., Barnes v. Uzu, No. 20-cv-5885, 2022 WL

784036, at *10 (S.D.N.Y. Mar. 15, 2022) (applying the executive

order to toll section 1983 claims); Doe v. State Univ. of N.Y.

Purchase Coll., 617 F. Supp. 3d 195, 207-08 (S.D.N.Y. 2022)

(applying the executive order toll to Title IX claims); D.S.R.

v. N.Y.C. Dep't of Educ., No. 21-cv-7591, 2023 WL 1993349, at *4

(S.D.N.Y. Feb. 14, 2023) (applying the executive order toll to

IDEA claims).

　　The statute of limitations for cases arising under the

IDEA, section 504, the ADA, and section 1983 are all imported

from state law. Accordingly, Governor Cuomo's executive order

tolled the applicable statutes of limitations from March 20, 2020, to November 3, 2020.

**4.**

In sum, no days elapsed from November 2, 2002, when J.Q. was included in the E.B. plaintiff class until the filing of the DPC. Subsequently, 807 days elapsed between the 2018 Decision and Governor Cuomo's executive order. Finally, 137 days elapsed between November 3, 2020, when the executive order expired, and January 2, 2020, when the plaintiffs filed this action. In total, 944 days of the 1095-day statute of limitations elapsed from the time the amended E.B. class action complaint was filed. Accordingly, any claims that accrued no more than 151 days prior to J.Q.'s inclusion in the E.B. class action—namely, after June 4, 2002—are timely. The DOE's motion for judgment dismissing any claims accruing after June 4, 2002, is **denied.** The motion for judgment dismissing claims accruing before June 4, 2002, is **granted.**

**IV.**

The DOE next alleges that the plaintiffs' systemic IDEA claims are "boilerplate and unavailing." See Defs.' Mem. of L. in Supp. Mot. to Dismiss ("Mot. to Dismiss") at 7, ECF No. 119. "In order to properly allege a systemic violation, [the] [p]laintiffs must allege a 'policy of general applicability that is contrary to law and not directed at any individual child.'"

20

Vinluan on behalf of D.V. v. Ardsley Union Free Sch. Dist., No.
19-cv-6496, 2021 WL 3193128, at *7 (S.D.N.Y. July 27, 2021)
(quoting Reyes v. Bedford Cent. Sch. Dist., No. 16-cv-2768, at
*9 (S.D.N.Y. Sept. 27, 2017)). The DOE contends that the Amended
Complaint's allegations are insufficient to state a claim
alleging a policy of general applicability that is contrary to
law.

However, the Amended Complaint incorporates the plaintiffs'
earlier DPC and Amended DPC, which include more than sufficient
detail to support the plaintiffs' systemic claims. See FAC ¶ 49
("The allegations in the 2015 DPC and amended due process
complaint (Exhibits A and B) are incorporated herein by
reference."); see also, e.g., FAC, Ex. B. ¶¶ 49-62 (alleging
facts in support of systemic claims). For example, among other
allegations, the plaintiffs allege that the DOE maintained a
"practice of illegally discharging and terminating the general
and special education services of students with disabilities
with behavioral issues in violation of the law." FAC, Ex. A. ¶
33. More specifically, they allege that students were either
denied an education entirely or were kept in alternative centers
that did not provide special education services. FAC, Ex. B. ¶
52. They further allege that the defendants failed to institute
a system of tracking students expelled from school, making it

easier for schools to violate children's rights without oversight. Id. ¶ 57.

Accordingly, the plaintiffs have stated a claim for systemic violations of the IDEA and the DOE's motion to dismiss the systemic claims is **denied**.

**V.**

The DOE next contends that the plaintiffs failed to state claims under section 504 or section 1983. Mot. to Dismiss at 8.

**A.**

First, the DOE argues that the plaintiffs have failed to state a claim under section 504. To establish a violation of section 504 of the Rehabilitation Act, a plaintiff must allege that "(1) he is a disabled person under the Rehabilitation Act; (2) he is otherwise qualified for the program; (3) he is excluded from benefits solely because of his disability; and (4) the program or special service receives federal funding." C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 840–41 (2d Cir. 2014); see also Mrs. C. v. Wheaton, 916 F.2d 69, 74 (2d Cir. 1990).

"Courts in this Circuit have recognized that a [s]ection 504 claim may be predicated on the claim that a disabled student was denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive." C.L., 744 F.3d at 841. "[S]omething more than a mere

22

violation of the IDEA is necessary" to demonstrate a violation of [s]ection 504. S.W. by J.W. v. Warren, 528 F. Supp. 2d 282, 289 (S.D.N.Y. 2007). Because the Rehabilitation Act addresses discrimination against disabled students rather than incorrect or inadequate IEPs, courts have required that plaintiffs demonstrate bad faith or gross misjudgment to plead a violation of section 504 in the IDEA context. Id.; see also Scaggs v. N.Y. Dep't of Educ., No. 6-cv-799, 2007 WL 1456221, at *15 (S.D.N.Y. Nov. 16, 2007).

However, "[i]ntentional discrimination may be inferred when a policymaker act[s] with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." S.W., 528 F. Supp. 2d at 291. Prolonged deprivation of a FAPE may constitute evidence of deliberate indifference to violation of federal rights. See, e.g., K.S. ex rel. D.S. v. City of N.Y., No. 21-cv-4649, 2023 WL 6608739, at *17 n.10 (S.D.N.Y. Oct. 10, 2023) (concluding that the defendants' "persistent failure" to provide the plaintiff with a FAPE was sufficient to state a section 504 claim).

The plaintiffs have satisfied the prima facie elements of a section 504 claim, alleging that J.Q. is an otherwise qualified disabled person pursuant to the Rehabilitation Act, FAC ¶¶ 7, 60, that he was excluded from school because of his disability,

FAC ¶¶ 57, 125, and that the DOE receives federal funding, FAC ¶ 14. Moreover, the plaintiffs have alleged "more than a mere violation of the IDEA." See S.W., 528 F. Supp. 2d at 289. Instead, the plaintiffs in this case have alleged that the DOE denied J.Q., as well as other similarly situated children, a FAPE for many years. This multi-year denial certainly constitutes a "persistent failure" to provide J.Q. with a FAPE and supports the conclusion that policymakers acted with "at least deliberate indifference" to the likelihood that J.Q.'s rights had been violated. See id. at 291.

Accordingly, the DOE's motion to dismiss the plaintiffs' section 504 claim is **denied.**

**B.**

Second, the DOE contends that the plaintiffs have failed to state a claim under section 1983.

**1.**

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

24

> person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and
> laws, shall be liable to the party injured in
> an action at law, suit in equity or other
> proper proceeding for redress . . . .

42 U.S.C. § 1983.

To state a claim for relief under section 1983, the
plaintiff must allege: "(1) the deprivation of any rights,
privileges or immunities secured by the Constitution and federal
law, (2) by a person acting under the color of state law."
Scaggs, 2007 WL 1456221, at *12. To hold a municipal entity
liable under section 1983 for the illegal actions of its
employees, a plaintiff must allege: "(1) an official policy or
custom that (2) causes the plaintiff to be subjected to (3) a
denial of a constitutional [or federal] right." Torraco v. Port
Auth. of N.Y., 615 F.3d 129, 140 (2d Cir. 2010).

To allege the existence of a municipal policy, a plaintiff
may show:

> (1) a formal policy which is officially
> endorsed by the municipality; (2) actions
> taken or decisions made by government
> officials responsible for establishing
> municipal policies which caused the
> alleged violation of the plaintiffs'
> rights; (3) a practice so persistent and
> widespread that it constitutes a "custom
> or usage" and implies the constructive
> knowledge of policy-making officials; or
> (4) a failure by official policy-makers
> to properly train or supervise
> subordinates to such an extent that it
> amounts to deliberate indifference to the

> rights of those with whom municipal
> employees will come into contact.

Vasquez on behalf of J.V. v. N.Y.C. Dep't of Educ., No. 22-cv-3360, 2024 WL 1332822, at *5 (S.D.N.Y. Mar. 28, 2024); see also Brandon v. City of N.Y., 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

An express policy of a municipal entity is "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). However, plaintiffs need not identify an express rule or regulation where they are able to show "that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." See Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Additionally, failure to train or supervise employees can give rise to municipal liability when a policy can be "inferred from evidence of deliberate indifference of supervisory officials to such abuses." See Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012).

"The Second Circuit has held that a [s]ection 1983 claim can be maintained against individual defendants on the basis of . . . [s]ection 504 violations." K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F. Supp. 2d 343, 362 (S.D.N.Y. 2005). By

26

contrast, "the Second Circuit permits IDEA-based [s]ection 1983
claims, but only where the plaintiff was denied the procedural
or administrative remedies that IDEA provides." Jenn-Ching v.
Baldwin Union Free Sch. Dist., No. 10-cv-1985, 2011 WL 941263,
at *6 (E.D.N.Y. Mar. 15, 2011), aff'd, 556 F. App'x 1 (2d Cir.
2013) (summary order), (citing Streck v. Bd. of Educ. of E.
Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008)
(summary order) & Quackenbush v. Johnson City Sch. Dist., 716
F.2d 141, 148 (2d Cir. 1983)); see also Vinluan, 2021 WL 3193128
at *9; K.M. ex rel. A.M. v. Manhasset Union Free Sch. Dist., No.
4-cv-1031, 2006 WL 1071568, at *7 (E.D.N.Y. Apr. 20, 2006).

　　　And for a section 1983 claim asserting a violation of the
Fourteenth Amendment, "[i]t is well settled . . . that a
plaintiff asserting a constitutionally based [section] 1983
claim for procedural violations of the IDEA must establish a
constitutional violation 'outside the scope of the IDEA.'"
Engwiller v. Pine Plains Cent. Sch. Dist., 110 F. Supp. 2d 236,
250 (S.D.N.Y. 2000) (quoting Evans v. Bd. of Educ. of Rhinebeck
Cent. Sch. Dist., 930 F. Supp. 83, 102-03 (S.D.N.Y. 1996)). "Put
differently, a plaintiff cannot seek redress under [s]ection
1983 for violations of procedural due process under the
Fourteenth Amendment if the violations for which she seeks
redress are actionable under the IDEA." L.B. N.Y.C Dep't of

Educ., No. 21-cv-6626, 2023 WL 1779550, at *13 (S.D.N.Y. Feb. 6, 2023).

Finally, courts have held "that parties seeking to enforce favorable administrative decisions are precluded from doing so under the IDEA because they are not aggrieved parties, but that these same parties may seek to enforce their claims under [section] 1983." A.T. v. N.Y. State Educ. Dep't, No. 98-cv-4166, 1998 WL 765371, at *7 (E.D.N.Y. 1998); see also Rutherford v. Fla. Union Free Sch. Dist., No. 16-cv-9778, 2019 WL 1437823, at *24–25 (S.D.N.Y. Mar. 29, 2019); L.B., 2023 WL 1779550, at *5. Essentially, plaintiffs may use section 1983 as a mechanism to enforce favorable administrative decisions where appeal is not permitted under section 1415(l) of the IDEA.

**2.**

In this case, the plaintiffs assert section 1983 claims premised on the DOE's alleged violations of section 504, the IDEA, and the Fourteenth Amendment.[6] See FAC ¶¶ 162–63, 165–166. The plaintiffs also assert a section 1983 claim rooted in the DOE's alleged failure to implement the 2018 Decision and 2018 Stipulation. See FAC ¶ 164.

---

[6] Neither party disputes that the individuals who allegedly deprived the plaintiffs of their rights under section 504, the IDEA, and the Fourteenth Amendment acted under the color of state law.

The plaintiffs have alleged plausibly that the DOE deprived J.Q. of his rights under section 504. Additionally, they have alleged facts sufficient to show that the deprivation took place pursuant to an official DOE policy. Although the plaintiffs do not point to an express policy, they allege plausibly that the practices of DOE employees were "so manifest as to imply the constructive acquiescence of policy-making officials." See Patterson, 375 F.3d at 226. Moreover, the plaintiffs' systemic allegations indicate conduct so pervasive that it could reasonably amount to "deliberate indifference" on the part of the municipality. The plaintiffs' section 1983 claim brought for the deprivation of rights guaranteed by section 504 therefore survives.

Similarly, the plaintiffs' section 1983 claim brought to ensure enforcement of the 2018 Decision and 2018 Stipulation survives because "parties seeking to enforce favorable administrative decisions" may do so through section 1983 in the absence of an enforcement mechanism in the IDEA. See A.T., 1998 WL 765371, at *7. The plaintiffs have alleged that they received a favorable decision at the administrative level and that the DOE has failed to comply with the terms of that decision. Section 1983 provides a means of assuring compliance.

By contrast, the plaintiffs have not stated a section 1983 claim for the DOE's alleged failure to provide J.Q. with a FAPE pursuant to the IDEA. The plaintiffs received a due process hearing and appealed elements of the IHO's decision to the SRO. Moreover, the plaintiffs have not alleged that the IHO was biased or that the proceedings were a sham. See Jenn-Ching Luo, 2011 WL 941263, at *6 (finding that the plaintiff could pursue a section 1983 claim based on allegations of IHO misconduct). Accordingly, the plaintiffs have not alleged that they were "denied the procedural or administrative remedies that IDEA provides," and have not pleaded a section 1983 claim for denial of a FAPE. See id.

Finally, the plaintiffs' claim that the DOE deprived the plaintiffs of rights guaranteed by the Fourteenth Amendment fails because, although the plaintiffs allege that J.Q. was deprived of his protected property interest in an education, the plaintiffs have not alleged a constitutional violation outside the scope of the IDEA. Deprivation of a FAPE is a claim which falls squarely within the purview of the IDEA.

In sum, the plaintiffs have stated plausible section 1983 claims for the DOE's alleged violation of section 504 and for enforcement of the earlier administrative decision and settlement. The remaining section 1983 claims do not survive.

### CONCLUSION

The Court has considered all of the arguments raised. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion for judgment on the pleadings is **granted in part** and **denied in part** as discussed above. The Clerk is directed to close ECF No. 118. The parties are directed to submit a Rule 26(f) Report by **December 20, 2024.**


SO ORDERED.
Dated:    New York, New York
          December 3, 2024

                              John G. Koeltl
                         United States District Judge

31